INGRAM, Judge.
The District Court of Bullock County, after an ore tenus proceeding, ordered the permanent termination of all parental rights of the mother in her five-year-old son, Roosevelt Lavar Snipes, in June 1988. The putative father was deceased at this time. Permanent legal custody was placed in the State of Alabama Department of Human Resources (DHR). The mother appeals.
The dispositive issue on appeal is whether there is clear and convincing evidence to support the trial court’s decision to terminate the mother’s parental rights.
We note at the outset that the natural parent has a prima facie right to custody of his or her child. However, this right is not absolute. The controlling consideration in child custody cases is the welfare and best interests of the child. Benton v. State Department of Human Resources, 515 So.2d 1263 (Ala.Civ.App.1987). In determining the child’s best interests, the court must consider whether the parent is physically, financially, and mentally able to care for the child. McConathy v. State Department of Human Resources, 510 So.2d 269 *283 (Ala.Civ.App.1987). The health and medical needs of the child, along with the parent’s past and present ability to provide for the child, may be considered in regard to terminating the parental rights of the parent. Johnson v. State, 485 So.2d 1185 (Ala.Civ.App.1986); Hudgins v. State, 418 So.2d 913 (Ala.Civ.App.1982). If the court finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibility to and for the child, then the parental rights of the parents can be terminated pursuant to § 26-18-7(a), Ala.Code 1975 (1986 Repl. Vol.).
We further note that the trial court's judgment following an ore tenus proceeding is presumed correct. This judgment will not be set aside on appeal unless it is found to be so unsupported by the evidence as to be plainly and palpably wrong. Fitzgerald v. Jeter, 428 So.2d 84 (Ala.Civ.App. 1983).
The record reveals that the Bullock County Department of Human Resources (department) began working directly with the mother shortly after the child’s birth to aid her in caring for the child’s special needs. The department provided transportation for the child’s medical appointments. The record further reveals that the child’s primary caretaker, his maternal grandmother, died in October 1985. Subsequently thereto, the child was placed in the temporary custody of the department after an adjudicatory hearing in April 1986. This custody order was based in part upon evidence supporting allegations that the mother had a history of alcohol abuse and, as a result, neglected her child’s special medical needs. There was evidence that the child had missed numerous medical appointments scheduled by the department with the Crippled Children’s Clinic in Montgomery. The child was placed in foster care, where he has since remained. There is evidence that the child’s medical condition and development have improved since his placement in foster care.
The child has been diagnosed as a Fetal Alcohol Syndrome child. As a result of this affliction, he is small for his age and has a stigmatic appearance. His skeletal size is between 28 and 36 months, although he is 60 months chronologically. He has been diagnosed as being mentally retarded. In addition, he has major orthopedic problems which require ongoing treatment. These orthopedic problems affect his feet, legs, hands, and fingers. In particular, he suffers from bilateral calcaneal vulgas feet, commonly known as club feet. He also suffers from tinea capitis, a recurring fungus, and frequent ear infections.
The evidence shows that the mother has a history of chronic alcohol abuse. As a result, she suffers from numerous medical problems.
In addition to alcohol abuse, the mother also has a history of criminal activity. She has been arrested for assault, disorderly conduct, reckless endangerment, and criminal menacing. In January 1988, approximately six months prior to the termination hearing, she was evaluated by the Taylor Hardin Secure Medical Facility to determine her competence to stand trial for charges of theft of property in the first degree and robbery in the first degree. There was evidence that she was intoxicated at the time of the alleged incident. During the evaluation she stated that she has been abusing alcohol since she was 17 years old, over a period of 23 years. She consumes approximately a half gallon of whiskey per day. She admitted to experiences which were indicative of visual, auditory, and tactile hallucinations. Her hallucinations appear to be the result of extensive alcohol abuse. Following her evaluation, she was diagnosed as suffering from major depression with psychotic features, adjustment disorder with depression, and ethanol dependence. She was also diagnosed as functioning intellectually in the borderline to mild retardation range.
The record indicates that the department has made diligent efforts to assist the mother in rehabilitating herself. On more than one occasion, the mother was advised of the changes she would have to make in her lifestyle in order to regain custody of her child. She was urged to seek employment. The department also encouraged *284 her to attend programs sponsored by Alcoholics Anonymous (AA) and counseling sessions held at East Central Mental Health Center. The evidence shows, however, that the mother made little effort toward self-rehabilitation. She has been unemployed since August 1986. Her attendance at the AA meetings was sporadic. She initially refused to attend the counseling sessions. However, at the time of the hearing, she had attended four sessions, beginning in May 1988. Her first session was cancelled because she appeared intoxicated. Often her visits with her child had to be cut short due to her inebriated condition.
A home visit was conducted a few weeks prior to the hearing. The social worker discovered overcrowded living conditions and a lawn littered with trash. The interi- or of the house was cluttered with beer cans and liquor bottles. There was evidence that the mother stayed at the house on an infrequent basis. At the time of the hearing, the mother had no source of income or transportation.
Section 26-18-7(a), Ala.Code 1975 (1986 Repl.Vol.), provides several factors which the court “shall consider,” but to which it is not limited, in determining whether parental rights should be terminated. These factors include the parent’s excessive abuse of alcohol, the parent’s mental deficiencies, and the department’s failure to rehabilitate the parent through reasonable efforts. Here, it is clear that the mother was unable to care for the special needs of her child due to the duration and nature of her alcohol problem. There is evidence that her drinking has created a personality disorder. In addition, there was testimony that the mother has the same problems in 1988 as she had in 1986, when the child was initially removed from her custody. The department’s attempt to rehabilitate the mother was apparently unsuccessful.
The record is clear that the department sought less drastic alternatives than the termination of the mother’s parental rights. There was testimony that the department had explored every possible relative resource for the child.
In view of the foregoing, we find that there was clear and convincing evidence that it was in the child’s best interests to have his mother’s parental rights terminated and custody placed with DHR.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.